IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------  :
                                                        :
                                                        :
                                                        : CASE NO. 1:05 CV 0695
CAROL PECK,                                             :
                                        Plaintiff,      :
                                                        :
                                                        : <u>MEMORANDUM OF OPINION</u>
                    -vs-                                 : <u>AND ORDER GRANTING</u>
                                                        : <u>DEFENDANT'S MOTION FOR</u>
                                                        : <u>SUMMARY JUDGMENT</u>
                                                        :
ELYRIA FOUNDRY COMPANY,                                 :
                                                        :
                                        Defendant.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        Defendant Elyria Foundry Company ("Foundry") asks this Court to dismiss

plaintiff Carol Peck's ("Ms. Peck") employment discrimination suit as a matter of law

pursuant to Fed. R. Civ. P. 56.  (Doc. 38).  Ms. Peck opposes the dismissal of her

action, a sex discrimination suit brought under Title VII of the Civil Rights Act of 1964,

42 U.S.C. 2000 et seq., on the grounds that the Foundry's non-discriminatory business reasons for refusing to hire the plaintiff were pretextual. (Doc. 39).

For the reasons set forth below, the Court grants the Foundry's Motion for Summary Judgment and dismisses this matter with prejudice as a matter of law.


**I. Background**

Ms. Peck, a Caucasian female, applied for employment with the Foundry on 1 June 2004. Ms. Peck noted in her complaint that she applied for "various positions" and came to the application process with "over five years experience in various capacities in the industry." (Doc. 1 at ¶5). Specifically, Ms. Peck avers she

> applied for various positions with Defendant on or about May 25, 2004. Despite the fact that Plaintiff was qualified for these positions with Defendant having over five years experience in various capacities in the industry, the Defendant failed to hire her, but instead hired numerous males who were far less qualified. Defendant's actions were based on Plaintiff's sex.

(Complaint, ¶ 5).

The evidence before the Court indicates Ms. Peck applied for a position at the Foundry on or about 1 June 2004. (Ms. Peck's Employment Application; Exhibit B ). In that application, Ms. Peck only named a prospective position as a Chipper and Grinder or as a Tow Motor Operator. Id. Ms. Denise Sprague, head of Human Resources with the Foundry, indicated in her deposition testimony that the position of Chipper and Grinder was not advertised but was broadcast by word-of-mouth through the current employees. (Depo. 15). Ms. Sprague acknowledged that Ms. Peck was considered and rejected for the Chipper and Grinder position. (Depo. 21).

2

In her testimony, Ms. Sprague outlined the typical hiring process as involving the following stages: an initial application submitted by a prospective employee;  a background check carried out by the Foundry;  an interview process involving Ms. Sprague and select plant supervisors; a call back interview and possible job offer. (Depo. 10-21).  Ms Sprague testified that Ms. Peck was not called for an initial interview for the Chipper and Grinder position because she was led to believe that Ms. Peck had Carpal Tunnel Syndrome as the result of her previous work as a Chipper and Grinder with another foundry – General Castings.  (Depo. 21).  Ms. Peck acknowledges certain medical issues while she was working at General Castings; during the pendency of these medical issues Ms. Peck moved from her Chipper and Grinder position to that of fork-lift operator. (Peck Aff. ¶¶ 5-7).  Ms. Peck did not return to the Chipper and Grinder position on a full-time basis during her employ with General Castings.  Id.  Ms. Peck avers she was "never told nor diagnosed as having carpal tunnel syndrome."  (Peck Aff. ¶ 6).

Ms. Sprague testified that she did consider Ms. Peck for positions other than Chipper and Grinder, but set aside her application until the Foundry could finish the women's locker room facilities.  (Depo. 26-30, 64-65).  Ms. Peck also acknowledges that Ms. Sprague approached her sometime after 12 June 2004, when the plaintiff was picking up her boyfriend – Brian Wolters – at the end of his shift at the Foundry, to let her know that her application was still active.  (Peck Aff. ¶ 15).  During Ms. Sprague's deposition the following colloquy occurred regarding that incident:

Q:      Have you ever met her before this?

A.      No, I have not.

3

Q     How did you know it was her?

A.     The time that Gary Ganig had come in to talk to me, she was sitting
       in a car outside my window, and I could see who it was inside the
       car.

Q.     Was that the time you went out to her?

A.     No it was not.  That was a different time.

(Sprague Depo. 65).

The deposition testimony, coupled with the affidavits submitted to the Court indicate it

was prior to the 28 July 2004 letter from Ms. Peck's attorney threatening legal action

that Mr. Ganig spoke with Ms. Sprague concerning Ms. Peck's work history.

According to Ms. Sprague's testimony, the Foundry did not immediately make a

determination on Ms. Peck's application.  (Sprague Depo. 26-35; 116-117).  Ms. Peck

avers that sometime prior to the end of July she was personally assured by Ms.

Sprague that her application was still being considered.  (Peck Aff. ¶ 15).  The Foundry

represents, and the depositions of Ms. Denise Sprague and Mr. Gary Ganig indicate,

that Ms. Peck's employment application was considered and discussed.  (Sprague

Depo. 21; Ganig Depo. 24-25  ).  In deposition testimony, Ms. Sprague indicates that

she approached Plant Supervisor Ganig after she received Ms. Peck's employment

application.  (Sprague Depo. 33-35).  The application indicated Ms. Peck had worked in

a Chipper and Grinder position at General Castings Company during a time in which

Mr. Ganig was plant supervisor there.  (Plaintiff's Ex. B at 5-6).

Mr. Ganig testified concerning his conversation with Ms. Sprague: he told Ms.

Sprague that Ms. Peck was a good worker, that she had suffered a wrist injury while

working as a Chipper and Grinder in her previous position at General Castings, and that

4

Ms. Peck had referred to her injury, in conversation with him, as Carpal Tunnel Syndrome.  (Ganig Depo.  12-14, 22, 24-25  ).  In addition, Mr. Ganig relays that he told Ms. Sprague that Ms. Peck had, along with her Carpal Tunnel difficulties, specific challenges getting to work at General Castings as a result of transportation and child care issues.  (Ganig Depo. 22-23).  While Ms. Peck denies having been diagnosed with Carpal Tunnel Syndrome, Mr. Ganig recalled, the plaintiff as referring to her medical issues as Carpal Tunnel Syndrome.  Id.

The evidence is uncontroverted, however, that Ms. Peck ceased laboring at her position as a Chipper and Grinder at General Castings and assumed the position of fork-lift operator there due to pain in her arms, wrists and hands for which she sought, and received, extensive medical attention.  (Peck Aff. ¶¶ 4-7; Ganig Depo.  22-25).  Further, the evidence is uncontroverted that Ms. Peck experienced specific challenges getting to work while employed by General Castings; difficulties of which Mr. Ganig had first hand knowledge.  (Peck Aff. ¶¶ 8, 9; Ganig Depo. 22-23).

Mr. Ganig further testified that he and Ms. Peck informally spoke at the Foundry sometime after she had placed an application for employment.  (Ganig Depo.  20). Mr. Ganig testified that he ran into Ms. Peck at the Foundry sometime after she had placed her employment application with Ms. Sprague.  Mr. Ganig noted that Ms. Peck asked him to "put in a good word for her," and that he replied "okay."  (Ganig Depo. 21). During Mr. Ganig's deposition the following colloquy occurred:

> Q:   What I'm asking you for is, she said, would you put a good name in
>        for me, okay, and you said okay.  That was the full extent of your
>        conversation?
>        Did you mean that you were going to put a good word in for her?

5

A:     I meant that if somebody asked me, i would tell them the truth about what I know about Carol.

Q:     And did you?

A:     Yes, I did.  I was asked and I told them that Carol was a good worker.  I told them that, from what I remember, she was in the cleaning room at General Castings, and had problems with respect to her arms, whether it was carpal tunnel.  And that her other problem was, is that she had trouble getting to work because of several things: her car, her children, which is exactly the truth.

(Ganig Depo. 22-23)

Ms. Sprague testified that she set Ms. Peck's employment application aside in the eventuality that the plaintiff could fill a position other than as a Chipper and Grinder. (Sprague Depo. 116-17).  In addition, Ms. Sprague testified that she put Ms. Peck's application aside to give the Foundry time to finish constructing a more convenient bathroom facility for the female employees.  Id.  In her Affidavit, Ms. Peck corroborates that weeks after her application submission she was personally assured by Ms. Sprague that her application was still under consideration.  (Peck Aff. ¶ 15).

Ms. Sprague further testified that she removed Ms. Peck's application from consideration when she received the 28 July 2004 letter from Ms. Peck's attorney. (Sprague Depo. 116). That letter served notice to the Foundry of imminent legal action for discrimination, alleging "the company chose not to hire [Ms. Peck] because of a stereotypical decision that women cannot work in the plant."  (Alan Goodman Letter, Defendant's Exhibit C).  Ms. Peck's counsel assured the Foundry that he would be filing charges of racial and sexual discrimination on Ms. Peck's behalf unless the Foundry contacted him within two weeks time.  Id.

6

Subsequently, Ms. Peck brought an EEOC charge alleging racial and sexual discrimination by the Foundry in its failure to hire her.  The EEOC issued a Right-To-Sue letter and Ms. Peck filed this lawsuit on 9 March 2005, pursuant to Title VII, 42 U.S.C. § 200e et seq, asking for injunctive relief against racial and sexual discrimination in employment.  (Docket No. 1).  The Court has previously determined that, as a Caucasian, Ms. Peck lacked standing to aver a claim of racial discrimination.  (Doc. 20). That portion of her complaint has been dismissed, leaving only Ms. Peck's sex discrimination "failure to hire" suit, predicated on Title VII, 42 U.S.C. § 200e et seq.

**II.      Summary Judgment Standard**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue

7

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting

Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the

nonmoving party must present evidence that creates a genuine issue of material fact

making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant,

Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex

stand for the proposition that a party may move for summary judgment by

demonstrating that the opposing party will not be able to produce sufficient evidence at

trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary

judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is

not sufficient to "simply show that there is some metaphysical doubt as to the material

facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986);

see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th

Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of

evidence in support of his position; the evidence must be such that a jury could

reasonably find for the plaintiff").  The nonmovant must " 'present affirmative evidence in

order to defeat a properly supported motion for summary judgment.' "  Id. (quoting in

part Anderson, 477 U.S. at 257); see Adams v. Metiva, 31 F.3d 375, 379 (6th Cir.1994).

The nonmoving party "must present significant probative evidence in support of its

complaint to defeat the motion for summary judgment."  Moore v. Philip Morris Co.,

8 F.3d 335, 339-40 (6th Cir. 1993).  Consequently, a nonmovant must do more than

raise some doubt as to the existence of a fact; the nonmovant must produce evidence

8

that would be sufficient to require submission to the jury of the dispute over the fact.
See Anderson, 477 U.S. at 248.  If the nonmovant fails to present such affirmative
evidence, then there is no need for a trial since there are no "genuine factual issues that
properly can be resolved only by a finder of fact."  Anderson, 477 U.S. at 247-48; see
Celotex, 477 U.S. at 322-23.

Rule 56(e) "requires the nonmoving party to go beyond the [unverified]
pleadings" and present some type of evidentiary material in support of its position.
Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).
Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that
properly can be resolved only by a finder of fact because they may reasonably be
resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th
Cir.1992) (citation omitted).


**III.  Analysis**

**A.  McDonnell Douglas Framework**

Title VII makes it an unlawful employment practice to "fail or refuse to hire or to
discharge" an individual because of that person's race or sex.  42 U.S.C. §
2000e-2(a)(1).  To succeed in her sex discrimination claim, Ms. Peck must navigate the
McDonnell Douglas burden-shifting test.  See McDonnell Douglas Corp. v. Green, 411
U.S. 792, 802 (1973); Braithwaite v. Timken Co., 258 F. 3d 488, 493 (6th Cir. 2001).

9

First, Ms. Peck has the burden of establishing a prima facie case that the Foundry's action in refusing to hire her was predicated on gender discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. at 802.  The complainant in a Title VII action must carry the initial burden of establishing a prima facie case of sexual discrimination.

The first three prima facie elements generally examine whether: (1) the plaintiff belongs to a protected class ( e.g., sex); (2) the plaintiff was qualified for the position; and (3) the plaintiff was subjected to an adverse employment action.  E.g.,  McDonnell Douglas, 411 U.S. at 802;  Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992).  The fourth element in a failure to hire case, as in McDonnell Douglas, requires the plaintiff to show she was rejected for the position and the employer continued to seek applications from persons with the plaintiff's qualifications and/or that a person outside of the plaintiff's protected class was hired.  McDonnell Douglas, 411 U.S. at 802;  Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1095 (6th Cir.1996).

Second, if Ms. Peck succeeds in making such a prima facie showing of discrimination, the Foundry then must assume the burden "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  See id. at 802; Braithwaite, 258 F.3d at 493.

Finally, if the Foundry successfully articulates a legitimate, nondiscriminatory reason for the adverse employment action, Ms. Peck has the burden to show that the Foundry's reason for the adverse employment action is pretext for what is, in essence, unlawful discrimination.  See McDonnell Douglas, 411 U.S. at 804; Braithwaite, 258 F.3d at 493.  Ms. Peck "can demonstrate pretext by showing that the

[Foundry's] proffered reason (1) has no basis in fact, (2) did not actually motivate the [Foundry's] challenged conduct, or (3) was insufficient to warrant the challenged conduct."  <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1021 (6th Cir. 2000).  <u>See</u> also <u>Cicero v. Borg-Warner Auto., Inc.</u>, 280 F.3d 579, 589 (6th Cir.2002); <u>Peters v. Lincoln Elec. Co.</u>, 285 F.3d 456, 471 (6th Cir.2002).

"An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee."  <u>Smith v. Chrysler Corp.</u>, 155 F.3d 799, 806-07 (6th Cir. 1998).  "In challenging an employer's action, an employee 'must demonstrate that the employer's reasons (each of them, if the reasons independently caused [the] employer to take the action it did) are not true.' "  <u>Id</u>.  (<u>quoting</u> <u>Kariotis v. Navistar Int'l Trans. Corp.</u>, 131 F.3d 672, 676 (7th Cir.1997)).

In examining whether the stated reason is pretext, the Court must determine whether the employer reasonably relied on the particularized facts before it at the time it made the employment decision.  <u>Smith</u>, 155 F.3d at 807.  The employer is not required to show that it left no stone unturned; rather, the central issue is whether the employer made a reasonably informed and considered decision before taking the adverse employment action. <u>Id</u>.

### B.  Application of Qualifications Evidence

As the basis of the Foundry's decision turns on evidence of qualification, it is important to recall the Sixth Circuit's position on qualification evidence.  In <u>Cline v. Catholic Diocese of Toledo</u>, 206 F.3d 651, 660-66 (6th Cir. 2000), the Sixth Circuit

11

cautioned that the courts must not use the "qualified" element of the <u>prima facie</u> case to heighten the plaintiff's initial burden. In an effort to ensure that the first two stages of the <u>McDonnell Douglas</u> inquiry remain analytically distinct, and to ensure a plaintiff's initial burden not be too onerous, <u>Cline</u> requires that the "qualified" prong of the <u>prima facie</u> case be evaluated in light of the plaintiff's employment record "prior to the onset of the events that the employer cites as its reason" for its decision. <u>Cline</u> at 206 F.3d at 662-3.

Moreover, the Sixth Circuit instructs that the legitimate non-discriminatory reason offered by the employer at the second stage of the <u>McDonnell Douglas</u> inquiry not be considered in determining whether the employee has produced sufficient evidence to establish a <u>prima facie</u> case. <u>Id</u>. at 660-1. Thus, assessing Ms. Peck's qualifications by comparison to similarly-situated non-protected class employees is a matter reserved to the Foundry's "legitimate non-discriminatory reason" rebuttal. <u>Id</u>.


**C. <u>Application of the McDonnell Douglas Framework</u>**

In reviewing the evidence presented, the Court determines that Ms. Peck has established the necessary elements for a <u>prima facie</u> case of sexual discrimination in hiring. Specifically, as a female Ms. Peck belongs to a class protected by Title VII; she applied for and was, pursuant to the strictures of <u>Cline</u>, qualified for the Chipper and Grinder position for which the Foundry was seeking applicants; despite those putative qualifications, Ms. Peck was rejected for employment by the Foundry; and, the Foundry filled the position with a person outside of the protected class. <u>See McDonnell Douglas Corp.</u>, 411 U.S. at 802.

12

In response, the Foundry has proffered a legitimate, nondiscriminatory reason for refusing to hire Ms. Peck.  Pointing to the depositions of Denise Sprague and Gary Ganig, the Foundry contends that Ms. Peck proved unsuitable for the Chipper and Grinder position.[1]  Ms. Peck's affidavit corroborates Mr. Ganig's testimony in material part.  Specifically, the Foundry submits that it learned of Ms. Peck's removal from a Chipper and Grinder position at her former place of employment due to "medical limitations," and of attendance issues at her former place of employment.  (Aff. Denise Sprague, ¶¶ 5, 6; Sprague Depo. P. 32; Ganig Depo. pp. 16-17).

Further, despite her "medical limitations" Ms. Sprague testified that she continued to consider Ms. Peck's application for the only other position she had put down on her application – Tow Motor Operator.  That specific position was not available during the pendency of Ms. Peck's application.  The Foundry also testified that Ms. Peck's application was removed from consideration when they received the 28 July 2004 letter from Ms. Peck's attorney threatening legal action.  They reasonably concluded it was not in the Foundry's best interest to "hire a lawsuit."

---

[1]Ms. Peck noted on her 1 June 2004 application that she sought a position as "Grinder – Tomotor – ?" (Plaintiff's Exhibit B).  The Foundry reasonably assumed Ms. Peck sought a position as either a "Chipper and Grinder" or as a "Tow Motor Operator."  The Foundry's unchallenged contention is that no "Tow Motor Operator" positions were available or advertised at the time of Ms. Peck's application.  (Doc. 38, p. 6).  Denise Sprague, the Director of Human Resources, notes that despite the absence of Tow Motor Operator positions, she had "decided to review [Ms. Peck's] application again when a job position in that field became available.  (Aff. Sprague ¶ 7).  Ms. Peck's Affidavit testimony corroborates Ms. Sprague's position.  (Aff. Peck ¶ 15) Ms. Sprague contends that in light of the 28 July 2004 letter from Ms. Peck's attorney threatening legal action the Foundry decided to take "no further steps" regarding the plaintiff's potential job placement.  Id. at ¶ 8.

13

**D.  <u>Consideration of Pretext</u>**

As the Foundry has articulated a legitimate, nondiscriminating reason for refusing to hire Ms. Peck, the burden now shifts to the plaintiff to show that this reason is a mere pretext.  A genuine issue of fact regarding pretext, sufficient to avoid summary judgment, will be found if an employee shows that: (1) the proffered reason has no basis in fact; (2) the proffered reason did not actually motivate the [refusal to hire]; or (3) the proffered reason is insufficient to explain the [refusal to hire].  <u>Cicero v. Borg-Warner Auto., Inc</u>., 280 F.3d at 589.

Under the first and third methods of showing pretext, the fact finder may infer discrimination from the circumstances.  <u>Id</u>.  The Sixth Circuit has further explained that the first method "consists of evidence that the reasons given by the employer simply did not happen."  <u>Peters</u>, 285 F.3d at 471.  The third method "ordinarily consists of evidence that other employees, particularly employees not in the protected class, were [hired] even though they engaged in substantially identical conduct to that which the employer contends motivated its [refusal to hire] the plaintiff."  <u>Id</u>. at 471-72.  Under the second method, Ms. Peck may not rely exclusively on her prima facie evidence, but instead must introduce some further evidence of discrimination. <u>Cicero</u>, 280 F.3d at 589.

Upon examination of the evidence, the Court concludes that Ms. Peck fails to meet her burden of showing pretext under any of the three methods.  With respect to the first method, the proffered reason for the Foundry's refusal to hire Ms. Peck for the Chipper and Grinder position – that she developed medical debilitations while working as a Chipper and Grinder for another company – has a basis in fact.  Ms. Peck admits

14

to developing difficulties in her arms, wrists and hands during her tenure as a Chipper and Grinder at General Castings and admits to being moved from that position as a result of her medical concerns.

Regarding the second method, the plaintiff has introduced statistical evidence that the Foundry has hired significantly more men than women to buttress its position that Ms. Peck was not hired because of her gender.  For two reasons the Court does not find the proffered statistical evidence probative of discrimination in this instance regarding the Foundry's rationale motivating their decision to not hire Ms. Peck for the Chipper and Grinder position.  First, while Ms. Peck has shown former experience as a Chipper and Grinder she has also shown that she was, nevertheless, removed from that position for medical reasons.  Ms. Peck corroborates those events.  As such, it was not unreasonable for the Foundry to conclude that Ms. Peck lacked the very qualifications necessary to fill the position of Chipper and Grinder.

This Circuit has long observed the principle that employers are generally "free to choose among qualified candidates" and "that the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987); Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996).   Here, however, Ms. Peck was simply not qualified for the position she sought on her application.  Moreover, in spite of her medical issues, the Foundry consistently continued to consider her for a position, a sentiment that Ms. Peck's affidavit corroborates.

Second, the Foundry's rationale for reaching its decision in refusing to hire Ms. Peck for the Chipper and Grinder position never wavered.  Ms. Peck's reliance upon the

15

decision in Cicero v. Borg-Warner to show pretext is inapposite.  In Cicero, the employer provided one reason in interrogatories for the plaintiff's discharge, a different reason during deposition, and another reason at the summary judgment stage of the litigation.  In Cicero, the Court found the employer's inconsistency raised an issue whether the proffered reason truly motivated the defendants decision.  No such inconsistency occurred in this instance.  The evidence shows the Foundry consistently maintained they turned away from the prospect of hiring Ms. Peck for the Chipper and Grinder position because of her reported medical issues.

With respect to the third method, Ms. Peck fails to show the proffered reason is insufficient to explain the Foundry's refusal to hire her for the Chipper and Grinder position. Indeed, Ms. Peck recounts her medical issues and her removal from the Chipper and Grinder position at General Castings.  Ms. Peck's reported medical condition sufficiently explains the Foundry's motivation in refusing to hire her for the Chipper and Grinder position.

### E.  Employer's Motivation

In a Title VII case, such as this, the Court is instructed to "look to the employer's motivation, not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position."  Wrenn, 808 F.2d at 502.  "[I]t is the employer's motivation and intent, not its business judgment, that is at issue." Id.  Ms. Peck has not shown the Foundry's decision to hire another applicant for the Chipper and Grinder position was motivated by sexual animus.  Instead, the uncontroverted evidence that Ms. Peck reported physical difficulties, culminating in medical treatment,

16

in that very position with a former employer caused the Foundry to remove her application from consideration.  Ms. Sprague testified that Ms. Peck's application was set aside for future consideration of another position, but that none were immediately available.  Ms. Peck corroborates Ms. Sprague's personal assurance that her application was still under consideration.

Ms. Peck insists that the medical condition which caused her removal from the Chipper and Grinder position at General Castings did not amount to Carpal Tunnel Syndrome.  However, even if the Foundry was mistaken as to the proper medical label applied to Ms. Peck's condition, the defendant's good faith belief at the time that it could refuse to hire the plaintiff comprises a legitimate, non-discriminatory reason sufficient to rebut Ms. Peck's prima facie case.  See, e.g., Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.");  Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3rd Cir. 1995) ("Pretext is not demonstrated by showing simply that the employer was mistaken.");  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (stating that for purposes of discerning a legitimate, non-discriminatory reason to rebut a prima facie discrimination claim, the inquiry is limited to whether the employer believed that the employee committed a terminable offense, not whether the employee in fact did so); Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988) ("no matter how mistaken the firm's managers, ... our inquiry is limited to whether the employer gave an honest explanation of its behavior"); Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th  Cir. 1987) ("[I]f the employer fired an

17

employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not [due to a discriminatory reason].").

### F.  Timing Evidence

Finally, Ms. Peck avers the Foundry is dissimulating over the issue of when they learned of Ms. Peck's medical concerns from Mr. Ganig.  Specifically, Ms. Peck contends her attorney's 28 July 2004 letter to the Foundry compelled it to find a reason not to hire her and only then did they speak with Mr. Ganig.  However, the uncontroverted deposition testimony, coupled with the affidavits submitted to the Court, indicate that Mr. Ganig spoke with Ms. Sprague concerning Ms. Peck's work history prior to the 28 July 2004 letter from Ms. Peck's attorney threatening legal action. Evidence shows that Ms. Peck acknowledges Ms. Sprague talked with her in person – assuring her that her application was still under consideration –  while Ms. Peck was in her car sometime after 12 June 2004.  (Peck Aff. ¶15).  Testifying to this encounter, Ms. Sprague acknowledges that she only recognized Ms. Peck in her car because Mr. Ganig had identified her to Ms. Sprague in an earlier conversation, pointing out Ms. Peck as she sat in her car outside the main office. (Sprague Depo. 65).  That earlier conversation was the one in which Mr. Ganig related his understanding of Ms. Peck's work history at General Castings.  Id.  Accordingly, Ms. Sprague's personal assurances to Ms. Peck that her application was still under consideration occurred prior to 28 July 2004 when the letter from Ms. Peck's attorney threatening legal action removed the plaintiff's application from consideration.  And, prior to that conversation with Ms. Peck,

18

Ms. Sprague learned of the plaintiff's work history at General Castings from Mr. Ganig. The Court finds no dissimulation here.

Accordingly, as Ms. Peck has not raised a genuine issue of fact that the Foundry's rationale for selecting another applicant over her for the Chipper and Grinder position was pretextual, the Foundry is entitled to summary judgment on Ms. Peck's sex discrimination claim.

### IV.  Conclusion

The Court grants Elyria Foundry's Motion for Summary Judgment and dismisses Ms. Peck's complaint of sex discrimination in its entirety.

IT IS SO ORDERED.

      /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

19